IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:12cv01

| | |
|---|---|
| DOROTHY ELAINE MINISH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF DECISION AND ORDER**

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment in support of Plaintiff's Social Security Disability Appeal [Doc. 10] and the Defendant's Motion for Summary Judgment [Doc. 11].

**PROCEDURAL HISTORY**

On July 21, 2007, the Plaintiff applied for supplemental security income alleging an onset date of June 21, 2007 and disability due to osteoarthritis, depression, chronic joint pain, and knee replacement. [Administrative Transcript (Tr.) 54-60, 68]. Her claim was denied on May 1, 2008 and again on January 09, 2009 after reconsideration. [Tr. 30-33; 38].

On February 10, 2009, the Plaintiff requested a hearing before an Administrative Law Judge (ALJ). [Tr. 43]. A hearing was held on October 22, 2009 at which time testimony was received from the Plaintiff as well as a vocational expert, Dr. Kathleen Robbins. [Tr. 674-692]. The ALJ issued a decision on January 13, 2010 in which he denied the Plaintiff's application. [Tr. 14-26]. Although the Plaintiff requested that the Appeals Council review the ALJ's decision, it denied review on November 1, 2011 thus rendering the ALJ's decision the final decision of the Commissioner. [Tr. 6-8]. The Plaintiff timely sought judicial review by filing this action on January 3, 2012.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes federal courts to review the Commissioner's denial of social security benefits.

> Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In reviewing for substantial evidence, [this Court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].

2

Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by regulation on other grounds 20 C.F.R. §416.927(d)(2)).

> The Commissioner uses a five-step process to evaluate disability claims. Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy. The claimant has the burden of production and proof in Steps 1-4. At Step 5, however, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience. If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps.

Hancock v. Astrue, 667 F.3d 470, 472-73 (4th Cir. 2012) (internal quotations and citations omitted).

Rather than separately stating the applicable facts, the Court will incorporate those facts into the legal analysis.

## DISCUSSION

In this case, the ALJ found at Step 1 that the Plaintiff has not engaged in substantial gainful activity since her application date. [Tr. 17, 19]. At Step 2, the ALJ found that the Plaintiff has severe impairments of osteoarthritis and depression. [Id.]. The ALJ determined at Step 3 that the

3

Plaintiff does not have an impairment or a combination of impairments that meets or equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 22]. The ALJ then determined that the Plaintiff, who has no past relevant work experience, retains the Residual Functional Capacity (RFC)[1] to perform light work with certain mental impairments and restrictions.[2] [Tr. 23]. Based on these conclusions, the ALJ found that the Plaintiff is capable of performing work existing in the national economy. [Tr. 25]. In reaching this conclusion, the ALJ considered the testimony of a vocational expert as well as the Medical-Vocational Guidelines. [Id. at 25-26].

The Plaintiff's first assignment of error is that the ALJ improperly evaluated her RFC because he failed to give the proper weight to the opinions of her treating mental health providers and improperly considered her Global Assessment Function (GAF).[3]

During the hearing on the Plaintiff's application, the ALJ questioned

---

[1] RFC is defined by the Social Security Regulations as the most that an individual is able to do despite his or her impairments. 20 C.F.R. §§404.1545(a), 416.945(a).

[2] See 20 C.F.R. §416.967(b) (defining light work as lifting no more than 20 pounds at the time with frequent lifting or carrying of objects weighing up to 10 pounds ).

[3] The GAF scale ranges from 0 to 100 based on psychological, social and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev. 2000) (DSM-IV-TR).

4

Dr. Robbins, the vocational expert, concerning the availability of jobs in the national economy. [Tr. 689-690]. Upon questioning by the ALJ about the impact of a GAF score of 50, Dr. Robbins testified that such an individual would be unemployable. [Id. at 689]. Upon further questioning about the impact of a GAF score of 57, Dr. Robbins testified that if the same individual with the same impairments had a GAF score of 57, there would be approximately 25,000 jobs which that individual could perform in North Carolina. [Id. at 688, 690].

In his decision, the ALJ made the following findings:

In terms of the claimant's alleged depression, the undersigned finds the claimant is limited as described in the mental residual functional capacity assessment dated January 18, 2008 [of Dr. Mitchel Rapp], which appears most consistent with the objective evidence as a whole. While the claimant experiences some limitations, her symptoms have improved with treatment.

As for the opinion evidence, great weight is given to the opinion of the State Agency medical consultant with regard to mental limitations as described in [Dr. Rapp's assessment] as they appear most consistent with the objective medical evidence of record. Greater weight is given the opinion of Dr. Carraway with regard to limitations. While Dr. Murray has treated the claimant, his limitations appear inconsistent with the claimant's improved symptomatology with treatment.

…

To determine the extent to which the[ ] [Plaintiff's] limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity for light exertion

> with the mental impairments described in [Dr. Rapp's assessment]. The vocational expert testified that given all of these factors, the individual would be able to perform the requirements of representative occupations such as janitor, cleaner, car wash worker, ground maintenance, food prep worker and kitchen helper. The vocational testified that there are 25,000 such jobs in the region and 727,000 such jobs in the national economy.

[Tr. 24, 26].

Beginning in November 2007, Dr. Michael Murray supervised the medication the Plaintiff was receiving for depression. [Tr. 412]. He did not provide therapy. One of his initial assessments was that her difficulties stemmed from a "lack of sophistication" and becoming "easily overwhelmed." [Id.]. He did not want to see her again until "1-2 months." [Id.]. After the initial visit, Dr. Murray saw the Plaintiff for eight, ten or twelve minutes per visit, at three month intervals, through August 2009. [Id. at 401-410; 570-574]. In January 2008, Dr. Murray noted that the Plaintiff's depression had improved. [Id. at 406]. By March 2008, Dr. Murray noted that her depression was "in remission," a diagnosis that continued until a year later when he noted a "mild relapse." [Id. at 570]. Dr. Murray initially noted a GAF score of around 50[4] and continued to maintain that opinion

---

[4] A GAF score of 41-50 indicates that the person has serious symptoms or serious impairment in social, occupational or school functioning. DSM-IV-TR at 32.

6

throughout this period. The record, however, does not contain any explanation of how he arrived at that score. [Id. at 401-410; 570-574]. None of the progress notes support "such an extreme" assessment. Spurlock v. Astrue, 2013 WL 841474 **24 (S.D.W.Va. 2013) (noting sporadic treatment also did not support the GAF score). Where no basis or explanation for the score assigned is provided, the ALJ is free to reject it where other contradictory evidence exists in the record. Ashby v. Astrue, 2011 WL 3163234 **21 (N.D.W.Va. 2011) (citing 20 C.F.R. §§404.1527(d)(3), 416.927(d)). Moreover, as treatment progressed, the Plaintiff improved. Spurlock, 2013 WL 841474. By the end of treatment with Dr. Murray, the Plaintiff had suffered only a "mild relapse." Id.

In September 2009, the Plaintiff's medication management was changed to Act Medical Group. [Id. at 542]. A nurse practitioner noted in a diagnostic interview that at an unspecified time, the Plaintiff had received a GAF of 45–50. [Id. at 544]. This does not appear to be an assessment of GAF, merely a report of the prior determination. The interview notes, which were not signed by the supervising physician, contain the information provided by the Plaintiff during her initial interview. A nurse practitioner does not qualify as a medical source and an opinion, if any, expressed by her would be evaluated as "other source" information. Ashmore v. Astrue,

2013 WL 837931 **5 (D.S.C. 2013) (citing SSR 06-03p).

In November 2007, Dr. Anthony Carraway conducted a Disability Determination consultative evaluation of the Plaintiff. [Tr. 441- 445]. He assessed a GAF of 57[5] during the same month that Dr. Murray assessed a GAF of 50. [Tr. 443]. His diagnosis was a mood disorder with depressive symptoms. [Id.]. Dr. Carraway provided reasons and explanations for his findings. [Tr. 441-45].

In January 2008, Dr. Rapp also conducted a psychological consultative evaluation and completed a Mental Residual Functional Capacity Assessment. [Tr. 531-533]. Dr. Rapp found that the Plaintiff's ability to understand, retain and perform instructions was minimally to mildly impaired for simplistic instructions and mildly to moderately impaired for complicated instructions. [Tr. 533]. She had a mild impairment of concentration with moderately poor stress tolerance. [Id.]. He did not refer to GAF scores.

In March 2009, Anita Price, a physician's assistant at the Buncombe County Health Department, completed a medical questionnaire for the Plaintiff's attorney. [Tr. 509-515]. Price is not to be considered a treating

---

[5] A GAF score between 51-60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning. DSM-IV-TR at 32.

8

source on the basis of this questionnaire. Ashby, 2011 WL 3163234 **19 (citing 20 C.F.R. §§404.1502, 416.902) ("if your relationship with the source is not based on your medical need … but solely on your need to obtain a report in support of your claim for disability" it is not an acceptable medical source). Moreover, no assessment of the Plaintiff's psychological based impairments, if any, was made; instead, reference was simply made to Dr. Murray. [Id.].

The Plaintiff argues that by accepting Dr. Carraway's GAF score of 57, which the ALJ of necessity did by finding the Plaintiff employable, the ALJ ignored the opinions of her treating mental health providers, including Dr. Murray.[6] As noted above, Dr. Murray's reported score was unsubstantiated in any manner. Ashby, 2011 WL 3163234 **21 ("no explanation was provided of the basis for the score assigned"); Spurlock, 2013 WL 841474 **24. The reported GAF score of a nurse practitioner is not a medical source. It is further noted that the questionnaire completed by Price, the physician's assistant, contained no information concerning mental health.

---

[6] The Plaintiff concedes that the ALJ considered the GAF scores of Drs. Murray and Carraway. [Doc. 10-1 at 26-27]. His failure to reference a specific score in his decision is not grounds for reversal. Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002).

A GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning." White v. Comm'r of Soc. Sec., 572 F.3d 272, 276 (6th Cir. 2009). It is, in other words, a "snapshot of functioning at any given moment." Fowler v. Astrue, 2011 WL 5974279 **3 (W.D.N.C. 2011). "A GAF score is thus not dispositive of anything in and of itself" and has no direct legal or medical correlation to the severity requirements of social security regulations. Oliver v. Comm'r of Soc. Sec., 415 Fed. App'x. 681, 684 (6th Cir. 2011). It is, instead, intended to be used to make treatment decisions. Leovao v. Astrue, 2012 WL 6189326 **5 (W.D.N.C. 2012) (citing Wilkins v. Barnhart, 69 Fed. App'x. 775, 780 (7th Cir. 2003)).

Thus, to the extent that the weight accorded by the ALJ to Dr. Rapp and Dr. Carraway conflicts with Dr. Murray's assessment of GAF scores, there is no error. Spurlock, 2013 WL 8441474 **24-25. Dr. Murray managed the Plaintiff's medication; but he did not provide any therapy, and any examinations or consultations did not exceed twelve minutes in duration. Id. The Social Security regulations state that an opinion that stems from a limited, brief health care relationship can be granted limited weight. 20 C.F.R. §404.1527(d)(2)(i)-(ii). Moreover, contrary to the Plaintiff's argument, the ALJ considered the GAF score provided by Dr.

Murray. He asked about it during the hearing when he questioned the vocational expert. He merely gave it less weight due to the fact that it was provided during an initial visit without any explanation or substantiation and was never reassessed in any meaningful manner. "[N]either agency regulations nor case law requires an ALJ to determine the extent of a claimant's mental disability based entirely on GAF scores." Beasley v. Astrue, 2012 WL 707091 **5 (E.D.N.C. 2012) (citing Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)).

As for Drs. Rapp and Carraway, "[t]he ALJ was required to consider the opinion[s] of th[ese] 'highly qualified' psychologist[s] who [are] 'expert[s]' in Social Security disability evaluations." Geiger v. Astrue, 2013 WL 317564 **6 (W.D.Va. 2013). "Where the opinion of a non-examining state agency physician is consistent with the record it can be relied upon." Rose v. Astrue, 2012 WL 6026473 **6 (E.D.Va. 2012). Here, the ALJ stated that the opinions of the consultative examiners were given great weight as to mental limitations because they were consistent with the objective medical evidence in the record. The Plaintiff's assignment of error is therefore overruled. Id.; Moore v. Astrue, 2012 WL 5906691 **15 (N.D.W.Va. 2012); Arthur v. Astrue, 2012 WL 4890374 **9 (D.S.C. 2012).

Although unclear, it appears that the Plaintiff claims the additional

evidence submitted to the Appeals Council renders the ALJ's decision unsupported by substantial evidence. [Doc. 10-1 at 28]. The Plaintiff's argument is based on one paragraph in which she claims the evidence, all of which postdated the hearing, shows continuing physical and mental health issues.

The Plaintiff's hearing occurred on October 22, 2009. The ALJ's decision was issued January 13, 2010. Most of the evidence referenced by the Plaintiff postdates the date of the decision.[7] [Tr. 589-671]. "[M]edical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the outcome of the ALJ's decision" and thus, may not be considered. Davis v. Astrue, 2011 WL 4005260 **4 (D.Md. 2011) (citing 20 C.F.R. §404.970(b)) (other citations omitted). None of the evidence submitted "speaks to the patient's condition at or before the time of the administrative hearing" and thus, may not be considered. Id. To the extent that the Plaintiff's evidence shows subsequent deterioration of a previously non-disabling condition, it also may not be considered. Id. (citing Szubak v.

---

[7] The evidence which predates that decision relates to pneumonia and knee pain in December 2009, well after the hearing. [Tr. 582-586]. The evidence also relates to the Plaintiff's evaluation by her new medication management company in December 2009. [Tr. 604]. This relates, however, to her medication management. [Id.]. As such, it is not "new and material evidence." 20 C.F.R. §416.1476(b)(1).

Secretary of Heath & Human Servs., 745 F.2d 831, 833 (3rd Cir. 1984)); Jackson v. Astrue, 2011 WL 1883036 **3 (W.D.N.C. 2011).

Although the Plaintiff has not argued the issue, to the extent that there is conflicting evidence, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Hancock, 667 F.3d at 472. It is not the role of this Court to draw different conclusions from the evidence; the duty of resolving conflicts in the evidence belongs to the ALJ. Id.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment in support of Plaintiff's Social Security Disability Appeal [Doc. 10] is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 11] is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED** and this case is hereby **DISMISSED**.

The Clerk of Court is instructed to enter Judgment.

Signed: March 14, 2013

Martin Reidinger
United States District Judge